IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 JUL -2 AM 9:07
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* George Gage,<br><br>                Relator,<br><br>-vs-<br><br>DAVIS S.R. AVIATION; DAVIS S.R. AVIATION, LLC; CHALLENGER REPAIR GROUP, LLC; ORION AIR GROUP LLC; BOMBARDIER INC.; NORTHROP GRUMMAN CORP.; and STEVE DAVIS,<br>                Defendants. | Case No. A-12-CA-904-SS |

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Challenger Repair Group, LLC, Davis S.R. Aviation, Davis S.R. Aviation, LLC, and Steve Davis's (collectively, the Davis Defendants) Motion to Dismiss [#54], Relator George Gage's Omnibus Response [#61], and the Davis Defendants' Reply [#66]; Defendant Bombardier Inc.'s Motion to Dismiss [#55], Bombardier's Amended Motion to Dismiss [#58], Gage's Omnibus Response [#61], and Bombardier's Reply [#69]; Defendant Northrop Grumman Corporation's Motion to Dismiss [#57], Gage's Omnibus Response [#61], and Northrop Grumman's Reply [#68]; Gage's "Opposed Motion for Leave of Court to File a Corrected Third Amended Complaint to Name a Real Party in Interest and Extension of Time to File All Memorandums in Opposition to Motions to Dismiss at One Time and Name Additional Related Defendants" [#59], Northrop Grumman's Response [#60], Bombardier's Response [#63], and the Davis Defendants'

Response [#64]; Gage's "Motion for Leave of Court to File a Corrected Reply to Defendants' Motions to Dismiss" [#62], the Davis Defendants' Response [#65]; Gage's "Motion Requesting Evidentiary Hearing, or in the Alternative a Hearing to Respond to Motions to Dismiss, leave of Court to File a Corrected Third Amended Complaint and Motion in the Alternative for Leave of Court to File a Fourth Amended Complaint" [#67], Bombardier's Response [#70], and the Davis Defendants' Response [#71]; and the Davis Defendants' Motion for Sanctions [#75]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING Defendants' motions to dismiss and dismissing this case with prejudice.

**Background**

This is a False Claims Act case concerning the salvaging of aircraft parts for resale to the Government for use in military aircraft. Beyond that basic premise, the specifics of the case are largely unknown to the Court. After holding a hearing on a prior round of motions to dismiss, the Court dismissed the Second Amended Complaint without prejudice, finding the pleading "nigh unintelligible," full of irrelevant, inflammatory, and inappropriate statements, and missing any facts tending to show the existence of any plausible False Claims Act claim. *See* Order of Feb. 14, 2014 [#40], at 2–3.

Gage accepted the Court's invitation to replead and filed a forty-seven page Third Amended Complaint [#46]. As best the Court can tell, the allegations in this case center around the salvaging of parts from a previously crashed aircraft, known as Aircraft 9211. The Davis Defendants apparently purchased the crashed aircraft, salvaged parts from it, repaired or tested those parts, and sold them on to military subcontractors for use in military aircraft in Afghanistan. Gage, represented

by his counsel in this case, previously served as an expert witness in a previous suit brought by some of the Davis Defendants against Rolls-Royce concerning the repair and sale of two engines from Aircraft 9211. *See Davis S R Aviation, LLC v. Rolls-Royce Deutschland, Ltd.*, No. 1:10-CV-00367-LY (W.D. Tex. Apr. 24, 2012). Gage contends the parts acquired by the Davis Defendants were not airworthy, and some combination of these Defendants conspired to sell the parts to the Government in violation of contractual or regulatory requirements.

Despite its length, the Third Amended Complaint is no more effective at pleading a False Claims Act claim than the prior complaints. This case has been pending in this Court since September 27, 2012. Gage has been given ample time and multiple opportunities to plead his case. He was previously instructed his Third Amended Complaint would be his "final opportunity" to plead the facts necessary to survive a Rule 12 motion. Order of Feb. 14, 2014 [#40], at 3. Gage has instead chosen to continue his pattern of scattershot pleadings. His responses are generally untimely, and followed almost immediately by requests to correct them or requests for additional time to respond. Most are accompanied by seemingly random documents attached as exhibits. Gage continues to insist on having an "evidentiary hearing," despite the posture of this case at the Rule 12 stage.[1] If there is a legitimate False Claims Act case buried underneath this mess, the Court cannot find it. For the reasons stated below, this case is dismissed.

## Analysis

### I.     Legal Standards

---

[1] At the Court's prior hearing, Gage's counsel insisted on making an "offer of proof" in support of his Second Amended Complaint. Because Rule 12 motions test the sufficiency of the *pleadings*, not the evidence, the Court declined the invitation.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

In addition to these basic pleading requirements, "claims brought under the FCA must comply with the particularity requirements of Rule 9(b)." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (*Steury I*). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *Id.* (internal quotation marks omitted).

## II. Application

The Defendants' motions advance two separate lines of argument against the Third Amended Complaint. First, Defendants contend the claims in this case are barred by the FCA's "public disclosure bar," and Gage is therefore precluded as a matter of law from prosecuting them. Second, and alternatively, Defendants contend Gage has failed to plead sufficient facts to meet Rule 9(b)'s particularity requirements.

### A. Public Disclosure Bar

The vast majority of Gage's allegations concern false claims submitted before March 23, 2010.[2] The FCA's 1986 public disclosure bar therefore applies to most of Gage's claims.[3] The 1986 public disclosure bar provides:

---

[2] Defendants have identified four specific allegedly false claims made after March 23, 2010: (1) an alleged sale of a variable frequency generator by Davis S.R. Aviation (doing business as Challenger Spares and Support, or CSS) to Orion Air Group, LLC, on September 10, 2010; (2) the sale of a generator control unit on April 6, 2010; (3) the sale of a Cabin Pressure Controller on April 29, 2010; and (4) the exchange of two brake assemblies by CSS with Orion on September 6, 2011.

[3] The public disclosure bar was amended on March 23, 2010, but the amendments "do not apply retroactively to suits pending at the time they became effective." *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 n.6 (5th Cir. 2011). Although Gage did not file this suit until 2012, the bulk of his claims accrued prior to the 2010 amendments. The Court therefore applies the 1986 version of the statute to all but the four allegedly false claims presented after March 23, 2010. *See U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 918 (4th Cir. 2013) (applying 1986 version of statute to action commenced after the 2010 amendments but concerning fraudulent conduct between 1996 and 2005); *U.S. ex rel Harman v. Trinity Indus., Inc.*, No. 2:12-CV-00089-JRG, 2014 WL 47258, at *3 (E.D. Tex. Jan. 6, 2014) ("[C]laims accruing before March 23, 2010 (the effective date of the new disclosure bar) are subject to the old [1986] disclosure bar; claims accruing since that date are subject to the newer version of the statute.").

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (1986). Under this version of the statute, the relevant questions are "1) whether there has been a 'public disclosure' of allegations or transactions, 2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and 3) if so, whether the relator is the 'original source' of the information." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995).

The Fifth Circuit has held "any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for purposes of section 3730(e)(4)(A)." *Id.* (internal quotation marks and alteration omitted). "This includes civil complaints." *Id.* It is not necessary for the exact allegations made in the *qui tam* case to have been made before. A public disclosure is made if the Government could "draw an inference of fraud" from disclosure of the "critical elements" of the fraudulent transaction. *U.S. ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 519 (N.D. Tex. 2012) (internal quotation marks omitted).

The allegations in the *qui tam* action need not be identical for purposes of the second element of this test, either. As the Fifth Circuit has explained, "if a *qui tam* action is even partly based upon public allegations or transactions then the jurisdictional bar applies." *U.S. ex rel. Fried v. West Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008) (internal quotation marks omitted). Applying this rule, the Fifth Circuit has held a *qui tam* suit was "based upon" publicly disclosed allegations even where

the *qui tam* suit and the previous disclosure had "only one instance of fraud" in common. *Fed. Recovery Servs.*, 72 F.3d at 451.

Finally, the FCA defines an "original source" as an individual who "has voluntarily disclosed [prior to any public disclosure] to the Government the information on which the allegations or transactions in a claim are based," or who "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). "Knowledge is direct if it is derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others." *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 332 (5th Cir. 2011) (internal quotation marks omitted). "[K]nowledge is independent if it is not derived from the public disclosure." *Id.* (internal quotation marks omitted).

There was a previous public disclosure of the alleged fraud in this case in the *Rolls-Royce* litigation before Judge Yeakel. The public filings (including the complaint and other motions filed by Rolls-Royce) in that case outline the same basic fraudulent scheme as Gage's pleadings in this case. In short, the pleadings in the *Rolls-Royce* case tell the story of the crash of Aircraft 9211, the acquisition of the wreckage by the Davis Defendants, the improper repair or certification of the parts, and the subsequent sale or lease of those "unairworthy" parts to government contractors for use in military aircraft in Afghanistan. This is the exact story which forms the basis for this *qui tam* action. It is certainly close enough to allow the Government to draw the same inference of fraud it could draw from the pleadings in this case, if any exists. To dispel any doubt, Rolls-Royce filed a motion to dismiss on April 15, 2011, in which it openly accused the Davis Defendants of violating the False

Claims Act by reselling improperly repaired or certified Rolls-Royce-manufactured engines from Aircraft 9211 to military contractors. *See* Bombardier's Am. Mot. Dism. [#58-3], Ex. B (Rolls-Royce's Motion to Dismiss), at 14 n.8.

There is no disputing this *qui tam* case is also "based upon" those publicly disclosed allegations. Although Gage has expanded the scope of the conspiracy to include more than just the Davis Defendants and more parts than just the Rolls-Royce engines, Gage's allegations are at a minimum "partly based upon" the allegations made in the *Rolls-Royce* case. *See Fried*, 527 F.3d at 442. Indeed, Gage has repeatedly alleged he is unable to disclose certain facts in support of his claims because he fears being sanctioned by this Court for violating the protective order entered in the *Rolls-Royce* case. If Gage's claims were not "based upon" facts uncovered in the *Rolls-Royce* case, he would have no need to disclose those facts to support his claims now.

Gage's Third Amended Complaint attempts to avoid the public disclosure bar by alleging he is an "original source" of the allegations. Specifically, Gage alleges:

> Mr. Gage under the FCA is an "original source" and learned of "suspected unapproved parts" or "non-conforming" parts as early as August 2011 before receiving any discovery documents from CSS in the litigation in Case Number 1:10-cv-367. Mr. Gage learned of False Claims submissions by review of Rolls-Royce documents where he served in an investigative and expert capacity for Rolls-Royce counsel in Case Number 1:10-cv-367 LY.
>
> Before Gage ever received any documents produced by CSS or used as an exhibit in court he was provided a packet of Rolls-Royce information that included a letter by Rolls-Royce counsel to the Department of Justice dated April 29, 2011 referencing a potential False Claim act case, only 21 days after the filing on April 8, 2011 of a "Protective Order" in Case Number 1:10-cv-367.

3d Am. Compl. [#46], ¶¶ 13–14.

Gage intended these allegations to save his case from the public disclosure bar, but instead they do the opposite. Gage openly admits he learned of the allegedly fraudulent conduct forming the basis for this case in his capacity as an expert witness for Rolls-Royce in the previous litigation. Gage's involvement post-dates Rolls-Royce's public disclosures, such as its motion to dismiss in April 2011, accusing the Davis Defendants of violating the FCA based on their conduct involving the wreckage of Aircraft 9211. It is impossible for Gage to be an "original source" of allegations he learned about when serving as an expert witness for a party which had already disclosed the allegations in the public record.

Gage relies heavily on the fact he allegedly learned about the fraud from Rolls-Royce rather than from the Davis Defendants. This distinction is meaningless. The relevant question is whether Gage's knowledge is independent and based upon his own efforts. *See Jamison*, 649 F.3d at 332. Gage's own pleading establishes his knowledge is not independent and is a result of Rolls-Royce providing him documents disclosing the alleged fraud. Gage admits Rolls-Royce even *informed the Government of the alleged fraud* by a letter dated April 29, 2011, nearly a year and a half before Gage filed this suit. Gage is not a whistleblower. He discovered no alleged fraud. Rolls-Royce discovered the alleged fraud, reported it to the Government, and handed the supporting documents to Gage months later. Gage is exactly the kind of "parasitic" relator Congress sought to bar from "seek[ing] remuneration although they contributed nothing to the exposure of the fraud." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 296 n.16 (2010) (internal quotation marks omitted).

All three elements required to invoke the 1986 public disclosure bar are present in this case. The broad contours of this allegedly fraudulent scheme were previously disclosed in public court

filings, and in a letter sent directly to the Department of Justice, by Rolls-Royce. Gage's allegations are based on those disclosures; indeed, the pleadings in this case largely parrot many of the public filings in the *Rolls-Royce* litigation. Gage cannot possibly be the original source of these allegations, having discovered them only after Rolls-Royce publicly disclosed them—and directly informed the Government of them—and then provided supporting documents to Gage when he was retained to serve as an expert witness in the *Rolls-Royce* case. Accordingly, this Court lacks jurisdiction to consider the vast majority of Gage's claims.

**B.     Rule 9(b)**

With respect to the four claims not subject to the public disclosure bar, and in the alternative with respect to those claims which are barred, dismissal is warranted because Gage has failed to adequately plead fraud with particularity.

First, Gage has inadequately pleaded the "who" of this alleged fraudulent scheme. Gage's allegations are as generic as possible with respect to each Defendant, alleging "Bombardier" did this or "Northrop Grumman" did that. The Fifth Circuit requires more of FCA complaints. Gage's task is to provide "the identity of the person making the misrepresentation." *U.S. ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008) (internal quotation marks omitted); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (affirming dismissal of FCA claim where relator failed to alleged "who at Humana made" an allegedly false representation). Gage does not identify any particular false representations or claims made to the Government, but even if he did, he is never more specific than the names of the corporate Defendants. Gage's Response rattles off a list of individual employees at the various Defendants, none of whom are ever mentioned in the Third Amended Complaint, without any facts

to support the conclusory allegations they made false statements.[4] This is absurd. The Court has already warned Gage's counsel to "focus on pleading with particularity the necessary factual allegations" to state an FCA claim. *See* Order of Feb. 14, 2014 [#40], at 3. Gage has had years to draft a complaint which states the "who" of this alleged fraud with particularity. His failure to do so must now be construed as an inability to do so.

Second, Gage's Third Amended Complaint fails to adequately plead "what" was false about any alleged claims made by the Defendants. Gage generally alleges the Davis Defendants supplied Orion with aircraft parts for use in its contracts with Northrop Grumman. Gage then generally alleges these parts were "unapproved, non-conforming and non-airworthy" because they were not "maintained to meet type certificate and type design specifications and were from accident related aircraft." 3d Am. Compl. ¶¶ 38–41. These parts apparently "violated the FAA and FAR regulations and ultimately the contract terms and conditions," and therefore resulted in false claims being made to the United States Air Force. *Id.* ¶ 37.

If Gage seeks to base his FCA claims on the Defendants' alleged failure to comply with some government contract, he must specify the contractual requirements at issue. *See* Order of Feb. 14, 2014 [#40], at 2 (deeming Gage's Second Amended Complaint deficient because it "alleges no contractual terms or obligations, making it impossible to determine if some breach or violation occurred"). The Fifth Circuit requires a relator claiming non-compliance with a contract to "identify the contractual provisions" allegedly violated and "reveal[] how the [products] deviated from the government's specifications." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 206 (5th Cir. 2013) (*Steury II*). In *Steury I*, the Fifth Circuit affirmed a dismissal of FCA claims where the

---

[4] With respect to Northrop Grumman, Gage still does not name a single specific individual.

relator had not pleaded the Government had conditioned payment on a certification of compliance "with some statute, regulation, or contract provision." 625 F.3d at 269. In *Steury II*, the Fifth Circuit again affirmed the dismissal of those claims based on alleged violations of contractual conditions regarding the merchantability of goods, finding fatal the relator's failure to identify the specific contractual provisions at issue, explain how the goods did not meet the contract specifications, or allege that compliance with any particular provision or regulation was "a prerequisite of payment." 735 F.3d at 206–07.

Gage has once again failed to identify any contractual provisions allegedly violated. His general allegations about parts not "conforming" to the contract are meaningless because he does not identify what it means to conform to the contract. However, the Third Amended Complaint does provide an explanation for this lack of detail. Gage concedes the relevant contract between Northrop Grumman and the United States Air Force, called the Battlefield Airborne Communication Node System or BACN contract, is classified. 3d Am. Compl. [#46] ¶ 34. Gage has not seen it. He cannot possibly know what requirements it contains. But that does not stop him from guessing!

Unable to review the actual BACN contract, Gage alleges the contract "included" various Federal Acquisition Regulations (FAR) and Defense Federal Acquisition Regulation Supplements (DFARS). *Id.* ¶¶ 21, 24. Gage makes no effort to explain what requirements any of these regulations impose on Northrop Grumman. As the Fifth Circuit has explained, "[t]he FCA is not a general enforcement device for federal statutes, regulations, and contracts. Not every breach of a federal contract is an FCA problem." *Steury I*, 625 F.3d at 268 (citation omitted). Conclusory allegations the Defendants violated federal regulations will not suffice to state an FCA claim. *See Steury II*, 735 F.3d at 206 (dismissing FCA claims because "the essence of the fraudulent activity of implied false

certification of compliance cannot be gauged unless Steury reveals *how the Signature pumps deviated from the government's specifications*" (emphasis added)). "At this point in the litigation, [Gage] ha[s] to know that merely descriptive or conclusory allegations about the [government] contracts [are] insufficient." *See id.* at 207.

Nor does Gage make any effort to explain how any of the aircraft parts provided violated the regulations he cites—the parts were simply "non-conforming." Gage concedes "there is nothing inherently wrong under the Federal Aviation Administration (FAA) regulations or the Federal Acquisition Regulations (FAR) with obtaining parts from an accident related aircraft." 3d Am. Compl. [#46] ¶ 37. Gage does not cite the text of any particular regulation, nor elaborate on how any individual part failed to conform to these alleged regulatory requirements.

In addition, *Steury I* held a contract must condition payment on compliance with whatever regulations were allegedly violated in order to state an FCA claim. *Steury I*, 625 F.3d at 268. Gage does not allege the Air Force conditioned its payment on compliance with any of the FAR or DFARS regulations he cites. Additionally, the Fifth Circuit addressed one of the precise FARs referenced in Gage's Complaint in *Steury I*. The court noted FAR § 52.246-2 allowed the Government to accept non-compliant goods and then pursue other remedies against the breaching party and therefore "suggests that payment is not conditioned on certification of compliance." *Steury I*, 625 F.3d at 269–70. One of the DFARS referenced by Gage, DFARS § 264.4, is similar because it incorporates by reference FAR § 52.246-2. Nothing in Gage's Third Amended Complaint suggests the Air Force conditioned payment on compliance with any of these regulations, and Gage's failure to allege as much is fatal to his claims.

Gage's Third Amended Complaint also wholly fails to identify any specific false claims, "the linchpin of an FCA claim." *Rafizadeh*, 553 F.3d at 873. Gage does not provide "the time, place[,] and contents of the false representations," as required by Fifth Circuit precedent. *Id.* (internal quotation marks omitted). Gage's allegations do not even track the allegedly non-conforming aircraft parts to the Government. Gage generally alleges the Davis Defendants salvaged the parts and provided them to Orion, "for use under its subcontract with Northrop Grumman." *E.g.*, 3d Am. Compl. ¶¶ 60–65. There the trail ends. Only conclusory allegations trace the parts from Northrop Grumman to the Government. *E.g.*, *id.* ¶ 63 ("This resulted in false claims paid to Northrop Grumman and Orion by the USAF."). Gage must provide more than mere conclusory allegations; he must, at a minimum, "offer[] particular and reliable indicia that false bills were actually submitted as a result of the scheme—such as dates that services were fraudulently provided or recorded, by whom, and evidence of the department's standard billing procedure." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009). Gage has provided no allegations about any specific claims Northrop Grumman made to the Air Force, or any claims the Air Force allegedly paid to Northrop Grumman.[5]

In sum, Gage's allegations do not meet the high standard imposed on FCA claims by Rule 9(b), and therefore must be dismissed.

## Conclusion

---

[5] Gage's pattern of non-allegations against Northrop Grumman, the party who actually contracted with the Government, as consistent with the source of his knowledge. Because Gage only knows what he learned about the Davis Defendants and their affiliates (e.g., Bombardier, Orion) in the prior litigation, he has no basis for pleading specific facts about the end of the supply chain, Northrop Grumman and the Air Force.

Gage has failed to state any claim for which relief can be granted. To the extent the Court has jurisdiction over any of his alleged FCA claims, he has failed to satisfy the requirements of Rule 9(b) and plead his fraud claims with particularity. Gage has had years to refine his pleadings and been given multiple opportunities to amend. He was warned after his previous complaint was dismissed for failure to allege sufficient facts that his third try would be his last. Another swing, another miss, and Gage has struck out. Further leave to amend would be wholly futile. This case is DISMISSED WITH PREJUDICE.

Accordingly,

IT IS ORDERED that Defendants Challenger Repair Group, LLC, Davis S.R. Aviation, Davis S.R. Aviation, LLC, and Steve Davis's (collectively, Davis Defendants) Motion to Dismiss [#54] is GRANTED;

IT IS FURTHER ORDERED that Defendant Bombardier Inc.'s Motion to Dismiss [#55] is DISMISSED;

IT IS FURTHER ORDERED that Defendant Bombardier Inc.'s Amended Motion to Dismiss [#58] is GRANTED;

IT IS FURTHER ORDERED that Defendant Northrop Grumman Corporation's Motion to Dismiss [#57] is GRANTED;

IT IS FURTHER ORDERED that Gage's "Opposed Motion for Leave of Court to File a Corrected Third Amended Complaint to Name a Real Party in Interest and Extension of Time to File All Memorandums in Opposition to Motions to Dismiss at One Time and Name Additional Related Defendants" [#59] is DENIED;

IT IS FURTHER ORDERED that Gage's "Motion for Leave of Court to File a Corrected Reply to Defendants' Motions to Dismiss" [#62] is DENIED;

IT IS FURTHER ORDERED that Gage's "Motion Requesting Evidentiary Hearing, or in the Alternative a Hearing to Respond to Motions to Dismiss, leave of Court to File a Corrected Third Amended Complaint and Motion in the Alternative for Leave of Court to File a Fourth Amended Complaint" [#67] is DENIED;

IT IS FURTHER ORDERED that the Davis Defendants' Motion for Sanctions [#75] is DISMISSED;

IT IS FINALLY ORDERED that all claims brought by Relator George Gage in the above-styled cause are DISMISSED WITH PREJUDICE.

SIGNED this the 1st day of July 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE